J-S34019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.S., FATHER | : | |
| | : | No. 393 WDA 2024 |

Appeal from the Order Entered March 6, 2024
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s): 32-23-0145

BEFORE: DUBOW, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.: **FILED: November 19, 2024**

J.S. ("Father") appeals from the decree which involuntarily terminated his parental rights to his daughter, S.S. ("Child"), born in April 2017.[1] In addition, Father's court-appointed counsel, Erica D. Dussault, Esquire ("Counsel"), has filed a motion to withdraw and accompanying brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). After careful review, we grant Counsel's motion to withdraw and affirm the termination decree.

We summarize the following factual and procedural history of this case from the certified record. Indiana County Children and Youth Services ("CYS")

_____

[*] Former Justice specially assigned to the Superior Court.
[1] On the same date, by separate decrees, the orphans' court terminated the parental rights of Child's mother, S.B. ("Mother"), to Child and her two half-sisters ("siblings"). Mother filed notices of appeal from those termination decrees which we dispose of separately at 321-323 WDA 2024.

has an extensive history of involvement with this family. *See* N.T., 2/27/24, at 34-35. Relevantly, in March 2018, CYS became involved when there was a fire at the family's home. *See id*. at 36. CYS learned that Child and her siblings had been left home alone for an undisclosed, *albeit* significant, amount of time and had to be evacuated from a second-story window. *See id*. Immediately following the house fire, CYS initiated a safety plan, and placed Child and her siblings with the family's neighbor, C.K., who ultimately filed for and was awarded custody of the three children. *See id*. at 35-37. Thereafter, they resided with C.K. until June 2021, when she informed CYS that she would no longer care for them.[2] *See id*. at 37. C.K. executed a voluntary placement agreement with CYS concerning Child in June 2021. *See id*.

In July 2021, following a hearing, the orphans' court adjudicated Child dependent. *See* Adjudication Order, 7/8/21. The court determined that Father remained an unstable placement option because of concerns regarding his mental health, suitability of housing, and lack of contact while Child was in C.K.'s care. *See* N.T., 2/27/24, at 38. The court established Child's permanency goal as reunification with Father with the concurrent goal of adoption. *See* Adjudication Order, 7/8/21.

_____

[2] As best we can discern from the certified record, C.K. reported that she could no longer manage Child and her siblings who were then displaying various behavioral issues. *See* Adjudication Order, 7/8/21.

In furtherance of reunification, the orphans' court ordered Father to (1) participate in a mental health assessment and follow any recommendations; (2) cooperate with service providers; (3) complete a parenting program; (4) maintain stable housing; and (5) attend visitation with Child. *See* N.T., 2/27/24, at 38. Additionally, CYS received two child protective service ("CPS") reports alleging that Father was the perpetrator of sexual abuse against Child and her siblings, which were ultimately deemed unfounded. *See id*. at 48-49. Despite this determination, the court ordered Father to participate in a sex offender risk assessment. *See id*.

According to CYS caseworker, Tori Hanig, Father initially participated in services, including undergoing a sex offender assessment in January 2022. *See id*. at 49, 72. However, Ms. Hanig reported that Father did not maintain contact with CYS and, therefore, during the final two years of Child's dependency, CYS was unaware of Father's participation in any services. *See id*. at 49-50. Regarding visitation, Ms. Hanig testified that Father attended 40 of 136 potential visits with Child and had not seen her since January 20, 2023. *See id*. at 60. Ms. Hanig also reported that, upon placement, Child was diagnosed with reactive attachment disorder, oppositional defiant disorder, post-traumatic stress disorder, selective mutism, and epilepsy. *See id*. at 58. Therefore, CYS implemented services to aid Child. *See id*.

On February 27, 2023, CYS filed a petition for the involuntary termination of Father's parental rights to Child pursuant to 23 Pa.C.S.A. §

2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. The orphans' court conducted an evidentiary hearing on February 27, 2024, at which time Child was six years old. The court appointed Child's guardian *ad litem* ("GAL") from the dependency case to fulfill the same role in the termination proceedings. Further, in compliance with section 2313(a), the court also appointed Joelyssa M. Johnson, Esquire, as legal interest counsel for Child. **See generally In re Adoption of K.M.G.**, 240 A.3d 1218, 1234-36 (Pa. 2020). CYS presented the testimony of Ms. Hanig and Carolyn J. Menta, Psy.D., a clinical psychologist who performed bonding assessments of Child and Father and Child and her foster parents. Dr. Menta testified that Child had an insecure bond with Father, a secure attachment with her pre-adoptive foster parents, and that termination of Father's parental rights would be in Child's best interest. Father did not appear but was represented by Counsel.[3]

By decree entered March 6, 2024, the orphans' court involuntarily terminated Father's parental rights to Child. The court concurrently filed an opinion setting forth its rationale pursuant to subsections 2511(a)(8) and (b). Father filed a timely notice of appeal, and in lieu of filing a Pa.R.A.P. 1925(b) concise statement, Counsel filed a statement of her intent to file an **Anders**

---

[3] The hearing was originally scheduled for September 27, 2023, however, the court continued the matter to February 27, 2024, to allow Father the opportunity to attend the hearing. **See** N.T., 2/27/24, at 5-6. Counsel for CYS, William J. Carmella, Esquire, reported that CYS arranged transportation for Father, but he still failed to appear. **See id**. 6-7.

brief and a motion to withdraw. *See* Pa.R.A.P. 1925(c)(4); *see also Interest of J.T.*, 983 A.2d 771 (Pa. Super. 2009) (determining that *Anders* procedure set forth in Rule 1925(c)(4) is proper in termination of parental rights case). In this Court, Counsel has filed an *Anders* brief and a motion to withdraw. Rather than filing a Rule 1925(a) opinion, the orphans' court referred this Court to its March 6, 2024 opinion that accompanied the termination decree.

When faced with an *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. *See In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014). As this Court has explained, in order to withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.
>
> With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

*In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citations and quotation marks omitted).

Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in *Santiago*:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that

counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***X.J.***, 105 A.3d at 3-4 (citation omitted).

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." ***Id***. at 4 (citations omitted). Our independent review is not limited to the issue(s) discussed by counsel, but extends to "additional, non-frivolous issues" that may have been overlooked by counsel. ***J.D.H.***, 171 A.3d at 908 (citation omitted). An appeal is frivolous when it ""lacks any basis in law or fact." ***Santiago***, 978 A.2d at 356 (citation omitted).

In this matter, Counsel filed a motion to withdraw certifying that, following a conscientious and thorough review of the record and relevant case law, she believes Father's appeal contains no non-frivolous issues. Additionally, Counsel filed an ***Anders*** brief which includes a summary of the procedural history and facts of the case with citations to the record, issues that could arguably support Father's appeal, and Counsel's assessment regarding why she believes the appeal is frivolous with citations to relevant legal authority. Counsel also attached to her motion the letter she sent Father which advised him of his rights to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; and (3) raise any points that Father

deems worthy of this Court's attention. As Counsel has met the technical requirements of **Anders** and **Santiago**, we will proceed to the issues Counsel has identified.

In the **Anders** brief, Counsel identifies the following issues for our review:

1. Did the orphans' court commit an abuse of discretion or error of law when it concluded that CYS established by clear and convincing evidence that there were grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(8)?

2. Did the orphans' court commit an abuse of discretion or error of law when it concluded that the termination of Father's parental rights was appropriate and in Child's best interest pursuant to 23 Pa.C.S.A. § 2511(b)?

**Anders** Brief at 8-9 (cleaned up).[4]

Our standard of review in termination proceedings is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus,

_____

[4] In lieu of filing briefs, CYS, the GAL, and Child's legal interest counsel jointly filed a letter with this Court stating that they support the decree involuntarily terminating Father's parental rights.

absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by section 2511, which requires a bifurcated analysis. *See id*. at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, then the court then must assess the petition under section 2511(b), which focuses on the child's needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quotation marks and citations omitted). This Court need only agree with the orphans' court's determination as to any one subsection of section 2511(a), in addition to section 2511(b), in order to affirm the termination of

parental rights.  ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In this case, we review the decree pursuant to section 2511(a)(8) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \* \*
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> \* \* \* \*
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

The first issue raised in the ***Anders*** brief concerns the orphans' court's termination ruling under section 2511(a)(8).  Pursuant to section 2511(a)(8), the petitioner must prove that (1) the child has been removed from parental

care for twelve months or more; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. This Court has explained:

> Unlike other subsections, § 2511(a)(8) does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children. [T]he relevant inquiry regarding the second prong of § 2511(a)(8) is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing. Further, the Adoption Act prohibits the court from considering, as part of the § 2511(a)(8) analysis, any efforts by the parent to remedy the conditions described [in the petition] which are first initiated subsequent to the giving of notice of the filing of the petition.
>
> Although § 2511(a) generally focuses on the behavior of the parent, the third prong of § 2511(a)(8) specifically accounts for the needs of the child. This Court has recognized that the application of [§ 2511(a)(8)] may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of her children.
>
> > However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [eighteen] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

*In re M.E.*, 283 A.3d 820, 832 (Pa. Super. 2022) (citations and quotation marks omitted).

With respect to the orphans' court's determination under section 2511(a)(8), Counsel concluded that an appeal of this determination is frivolous due to the testimony and evidence introduced establishing the amount of time that Child has been in placement, Father's failure to engage in any court ordered services after 2022, Father's failure to take any steps after 2022 to remedy the conditions that existed at the time of Child's placement, Father's lack of visitation with Child, and the testimony from Dr. Menta stating that it would be in Child's best interest for Father's rights to be terminated due to the insecure bond that she has with Father.

In its opinion, the orphans' court explained the basis for its determination that Father's parental rights to Child should be terminated under section 2511(a)(8) as follows:

> After careful consideration, the court finds that statutory grounds for termination under . . . section 2511(a)(8) have been proven by clear and convincing evidence. First, it is clear that it has been 12 months or more since the removal of [Child]. The [Child was] removed in July of 2021, therefore, more than 31 months have elapsed from the date of removal until the present time.
>
> Next, the court must determine whether the conditions necessitating placement still exist. The court reaches this conclusion succinctly yet comprehensively. Without restating the testimony and evidence once again, the court states that . . . Father ha[s] not only failed to make progress, [he] ha[s] not attempted to make progress. Through [his] words and deeds, [he] have made it clear that [he has] no intention of addressing the conditions that led to the removal of [C]hild. And[,] it is clear to the court that the lack of empathy for [Child] and the resulting approach has a resulted in a situation where the condition that existed at the time of removal no longer exist; the idle passage of

time has made the conditions much worse.

＊ ＊ ＊ ＊

The court notes that Dr. Menta testified that there is a bond between Father and [Child], however, Dr. Menta concluded that "[t]he potential harm of severing her insecure attachment with [F]ather is far outweighed by the benefits of allowing her to continue to enjoy the secure bond she has formed with her foster parents."

Orphans' Court Opinion, 3/6/24, at unnumbered 16-17, 19 (unnecessary capitalization omitted).[5]

Based on our review, we conclude that the orphans' court's termination ruling as to section 2511(a)(8) is supported by competent evidence of record. It is undisputed that Child, who was adjudicated dependent in July 2021, has been removed from Father's care for more than the requisite twelve months. The record is also clear that Father, who refused to participate in services for approximately two years prior to the termination hearing, has not remedied the conditions that led to Child's placement. Although Father initially participated in some services, Ms. Hanig testified that Father did not maintain contact with CYS, as follows:

_____

[5] We note that the orphans' court improperly analyzed the best interest prong of section 2511(a) together with section 2511(b). **See C.L.G.**, 956 A.2d at 1009 (holding that "while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the 'needs and welfare of the child,' we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the 'needs and welfare' of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b)"). Despite the orphans' court's oversight on this point, we nevertheless determine that CYS satisfied its evidentiary burden.

Q: So for approximately two years[, Father] has not complied with services, and that has been ordered that he comply with those services during numerous permanency review proceedings and orders, and [CYS] is unaware whether [] he has completed any of those requirements?

A: That is correct.

Q: Is [CYS] aware as we're here today whether [Father] is participating in any services at all?

A: He has not maintained contact with [CYS]. So I'm unaware of any services he may [] be participating in.

N.T., 2/27/24 at 49-50. Ms. Hanig additionally confirmed that, following Father's completion of a sex offender risk assessment in January 2022, "he did not comply with any additional services." *Id*. at 72. Further, Father missed a significant number of visits with Child, only attending 40 of 136 offered. *See id*. at 60. Even more concerning, Father had not seen Child in over a year. *See id*. Finally, Ms. Hanig testified that she learned that Father's previous residence was condemned, and, therefore, CYS no longer knew where he was residing. *See id*. at 50.

With regard to the final prong of section 2511(a)(8), Ms. Hanig testified that Child was thriving in her current placement. *See id*. at 57-59. Following the voluntary placement agreement executed in June 2021, Child, then four years old, was placed in a pre-adoptive home where she remained through the termination proceedings. *See id*. at 57. Ms. Hanig reported that Child was diagnosed with reactive attachment disorder, oppositional defiant disorder, post-traumatic stress disorder, selective mutism, and epilepsy. *See*

*id*. at 58. Therefore, she participated in psychiatric services, trauma therapy, and family-based therapy. *See id*. Due to the progress Child made and the stability and support provided by her foster parents, these services were no longer required at the time of the termination hearing. *See id*. at 58-59.

Based on the foregoing, we conclude that the record supports the orphans' court determination to terminate Father's parental rights under section 2511(a)(8) because Child had been removed from his care in excess of the twelve-month statutory minimum, the conditions which led to Child's removal continued to exist, and termination would best serve the needs and welfare of Child. Thus, first issue raised in the *Anders* brief is frivolous.

The second issue raised in the *Anders* brief concerns the orphans' court's ruling regarding section 2511(b). Section 2511(b) requires the court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child" when considering whether to involuntarily terminate parental rights. 23 Pa.C.S.A. § 2511(b). Our Supreme Court in *In re E.M.*, 620 A.2d 481 (Pa. 1993), first recognized that the "emotional needs and welfare" analysis under section 2511(b) should include, in part, the child's bond with his or her parent. The Court later articulated that the effect on the child of severing a bond with a parent requires "a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and

welfare." ***In the Interest of K.T.***, 296 A.3d 1085, 1109 (Pa. 2023). The

***K.T.*** Court explained:

> Severance of a "necessary and beneficial" bond would predictably
> cause more than the "adverse" impact that, unfortunately, may
> occur whenever a bond is present. By contrast, severance of a
> necessary and beneficial relationship is the kind of loss that would
> predictably cause "extreme emotional consequences" or
> significant, irreparable harm. ***See E.M.***, 620 A.2d at 484 ("a
> beneficial bonding could exist between a parent and child, such
> that, if the bond were broken, the child could suffer extreme
> emotional consequences").

***K.T.***, 296 A.3d at 1109-10 (some citations omitted). As such, the ***K.T.*** Court

distinguished "extreme emotional consequences" from an "adverse impact" to

the child when parental rights are terminated. ***Id***. at 1111. Moreover, the

Court cautioned that a trial court "must not truncate its analysis and preclude

severance based solely on evidence of an 'adverse' or 'detrimental' impact to

the child." ***Id***. at 1114. As such, the Court concluded, "to grant termination

when a parental bond exists, there must be clear and convincing evidence that

the bond is not necessary and beneficial." ***Id***.

Furthermore, the ***K.T.*** Court reaffirmed that caselaw "indicates that

bond, plus permanency, stability and all 'intangible' factors may contribute

equally to the determination of a child's specific developmental, physical, and

emotional needs and welfare, and thus are all of 'primary' importance in the

Section 2511(b) analysis." ***K.T.***, 296 A.3d at 1109. For instance, if relevant

in a case, a trial court "can equally emphasize the safety needs of the child"

in its analysis under Section 2511(b).  ***See In re M.M.***, 106 A.3d 114, 118 (Pa. Super. 2014).

> Additionally, this Court has recognized that,

>> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound.  If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists.  The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

***In re K.K.R.-S.***, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Counsel reasoned that an appeal of the orphans' court termination determination under section 2511(b) was frivolous because at the time of the hearing, Child had been with her current foster family for almost three years, and Dr. Menta stated that Child and the foster family had a positive bond which seems secure and stable and that Child would benefit from continued stability within that setting.  Dr. Menta also performed a bonding assessment between Father and Child and found that their bond was insecure and there would be no negative impacts on Child if the bond would be severed.

The orphans' court explained its termination ruling under section 2511(b) as follows:

> The court notes that Dr. Menta testified that there is a bond between Father and [Child], however, Dr. Menta concluded that "[t]he potential harm of severing her insecure attachment with [F]ather is far outweighed by the benefits of allowing her to continue to enjoy the secure bond she has formed with her foster parents." . . ..
>
> Based on the credible and uncontradicted expert testimony of Dr. Menta, and the credible and uncontradicted testimony from Tori Hanig, the court finds that the termination of parental rights of . . . Father would best serve the developmental, physical and emotional needs and welfare of [C]hild.

Orphans' Court Opinion, 3/6/24, at unnumbered 19.

In the instant matter, the bonding assessment conducted by Dr. Menta revealed that Father shared an insecure bond with Child. Dr. Menta testified, as follows, regarding her assessment:

Q: And ultimately you reached the conclusion that you did not have concerns with severing the bond that exists between [Father] and [Child], is that correct?

A: Yes, that's right.

Q: One of the reasons that you get into is the fact of [Child's] behavior, about how quiet she was during the evaluation or during the visit that you observed. Why would that be something that would be important to you?

A: Her selective mutism suggests to me a level of anxiety. The fact that she was not verbalizing much with [Father], that was concerning to me.

Q: You said selective mutism. What does that mean?

A: Essentially that means that a child does not speak in certain circumstances or around certain individuals, and in [Child's] case

it appears that she's particularly choosy about who she will speak with.

* * * *

Q: Was there anything specifically as it related to [Father] outside of the observation that led you to [recommend termination of Father's parental rights]?

A: Ultimately, it was primarily [Child's] interactions with [Father]. She showed a lot of anxiety and ambivalence about that interaction. It appeared to be certainly an insecure bond. And when there's an insecure bond, that can lead to problems for the child later on. So in this case I felt it was in her best interest to sever the bond because she had a secure attachment with her [pre-adoptive foster parents].

N.T., 2/27/24, at 18-20. The foregoing evidence makes clear that Child did not share a "necessary and beneficial" bond with Father. **See K.T.**, 296 A.3d at 1114.

In contrast to her bond with Father, Dr. Menta emphasized that Child displayed "a level of comfort and also a level of security" with her foster parents. **See** N.T., 2/27/24, at 21. Ms. Hanig also concluded that termination would best serve Child. **See id**. at 60-61. She testified that Child needs stability, which the foster parents have provided, as evidenced by the significant improvements to Child's mental health, as referenced above. **See id**. Accordingly, we discern no abuse of discretion or error of law in the orphans' court's conclusion that termination best serves Child's developmental, physical, and emotional needs and welfare pursuant to section 2511(b). As such, we conclude that the second issue raised in the **Anders** brief is frivolous.

Finally, we note that our independent review of the record has disclosed no non-frivolous issues that Counsel, intentionally or not, missed or misstated. *See J.D.H.*, 171 A.3d at 908. Therefore, we grant Counsel's motion to withdraw from representation and affirm the decree terminating Father's parental rights to Child pursuant to section 2511(a)(8) and (b).

Motion to withdraw granted. Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: __11/19/2024__